IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HONEST GREENS BARCELONA, S.A.U.,<br><br>Plaintiff,<br><br>vs.<br><br>POKY'S LLC,<br><br>Defendant. | CASE NO.: 4:24-cv-07023-JD |
| POKY'S LLC, a South Carolina limited liability company,<br><br>Counterclaimant,<br><br>vs.<br><br>HONEST GREENS BARCELONA, S.A.U., a Spanish corporation,<br><br>Counterdefendant. | **MEMORANDUM ORDER AND OPINION** |

This trademark dispute concerns competing use of the name HONEST GREENS in connection with restaurant services. Before the Court is Defendant Poky's LLC's ("Poky's" or "Defendant") Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (DE 54), supported by a memorandum (DE 54-1). Plaintiff Honest Greens Barcelona, S.A.U. ("Honest Greens" or "Plaintiff") filed a Memorandum in Opposition (DE 55), and Poky's filed a Reply (DE 56). Defendant seeks judgment on all six claims in the operative First Amended

Complaint (DE 24). For the reasons below, the Court grants the motion in part and denies it in part.

## I. BACKGROUND

### A. Factual Background

The following summary is drawn from the First Amended Complaint, whose well-pleaded factual allegations the Court accepts as true for purposes of this Rule 12(c) motion.

Honest Greens is a Spanish corporation that operates restaurants in Spain and Portugal under the HONEST GREENS name and related marks. (DE 24 ¶¶ 7–10.) Plaintiff alleges that it has continuously used the HONEST GREENS and HG HONEST GREENS marks since at least 2017, owns registrations for HONEST GREENS marks in several foreign jurisdictions, and has developed substantial goodwill through restaurant operations, advertising, digital platforms, and social media. (*Id.* ¶¶ 9–22.)

Although Honest Greens does not allege that it presently operates a restaurant in the United States, it pleads substantial contact with United States consumers. The First Amended Complaint alleges that Honest Greens has sold millions of dollars of meals at its European restaurants, including to customers from the United States. It also contends that it has marketed its services to United States consumers; has received tens of thousands of visits to honestgreens.com from United States IP addresses; and since 2021, has attributed at least seven percent of its sales to customers using United States-based credit cards. (*Id.* ¶¶ 10–15.) Plaintiff also

alleges that more than 36,000 United States-based users have downloaded its mobile application and that approximately 8,000 United States-based users follow its HONEST GREENS Instagram account. (*Id.* ¶¶ 16–20.) According to Plaintiff, the application permits users, including travelers in the United States, to place an order in advance for collection at one of Plaintiff's European restaurants. (*Id.* ¶¶ 16–19.)

Poky's is a South Carolina limited liability company. (*Id.* ¶ 32.) The First Amended Complaint alleges that Poky's was formed in October 2022. (*Id.*) It further alleges that Evi Spaho, an individual associated with Poky's, registered the domain name <honestgreens.us> on or about July 1, 2022, and later transferred the domain to Poky's. (*Id.* ¶¶ 37–38.) According to the pleading, Spaho selected the .us top-level domain because <honestgreens.com> was already owned by Honest Greens and unavailable, a circumstance Plaintiff alleges Defendant knew at the time Spaho registered the domain. (*Id.* ¶ 39.) Plaintiff alleges that Poky's thereafter used the .us domain, a website, a mobile application, and the Instagram username HONESTGREENS.US to promote a Myrtle Beach restaurant operating under the HONEST GREENS name. (*Id.* ¶¶ 41–46.)

The First Amended Complaint alleges that these uses have caused source, sponsorship, and affiliation confusion and have injured Plaintiff's goodwill and reputation. (*Id.* ¶¶ 49–51.) Paragraph 50 provides examples of alleged consumer confusion, including a message asking, "Same menu as honest greens abroad?" and another reporting, "I've placed this order but it got sent to the wrong location in Myrtle Beach." (*Id.* ¶ 50.) Plaintiff alleges that consumers are likely to believe Poky's

restaurant services are authorized, endorsed, sponsored by, or otherwise affiliated with Honest Greens. (*Id.* ¶¶ 55, 65.)

Based on those allegations, the First Amended Complaint asserts six claims. Count I, captioned "Federal Unfair Competition," invokes both 15 U.S.C. § 1125(a)(1)(A), for false association, and § 1125(a)(1)(B), for false advertising. (*Id.* ¶¶ 52-59.) Count II separately alleges false association under § 1125(a)(1)(A). (*Id.* ¶¶ 60–68.) Count III alleges cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (*Id.* ¶¶ 69–75.) Counts IV through VI assert, respectively, a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), common law unfair competition, and common law trademark infringement. (*Id.* ¶¶ 76–86.)

**B. Procedural Background**

Honest Greens filed the First Amended Complaint on May 16, 2025. (DE 24.) Poky's answered and asserted counterclaims on June 3, 2025 (DE 26), and Honest Greens replied to the counterclaims on June 17, 2025 (DE 27). Thus, the pleadings were closed before Defendant filed the present Rule 12(c) motion. *See* Fed. R. Civ. P. 7(a), 12(c).

The Court later entered a Consent Order for Partial Preliminary Injunction on December 31, 2025. (DE 43.) The consent order is part of the procedural history but does not resolve the merits of the claims now before the Court, and the Court treats neither party's agreement to interim relief as a concession on liability. By its terms, the consent order addressed preliminary equitable relief concerning Defendant's

expansion operations, preserved Plaintiff's ability to seek permanent injunctive relief against the existing Myrtle Beach operation and the expansion operations, and provided that the action would remain open as to liability, monetary damages, permanent injunctive relief, and all other relief. (DE 43 at 2.) On February 3, 2026, the Court entered a Second Amended Scheduling Order setting May 24, 2026, as the motions deadline. (DE 50.) Poky's filed its Rule 12(c) motion on February 27, 2026. (DE 54.) Honest Greens responded on March 13, 2026 (DE 55), and Poky's replied on March 20, 2026 (DE 56). The motion was, therefore, timely filed and is ripe for disposition.

After briefing on the Rule 12(c) motion concluded, the parties proceeded through discovery and filed summary judgment motions. (DE 62; DE 63.) Those later filings do not alter the pleadings on which the present motion rests. This Order addresses only the Rule 12(c) issues presented by DE 54. It does not decide the evidentiary record or any issue that must be resolved on the pending summary judgment motions.

## II. LEGAL STANDARD

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed——but early enough not to delay trial." Fed. R. Civ. P. 12(c). The Fourth Circuit has held that "[t]he standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *see also Burbach Broadcasting Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

Accordingly, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in favor of the nonmovant, but it need not accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading must contain enough factual matter to state a claim that is plausible on its face; labels, conclusions, and a formulaic recitation of elements will not suffice. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The purpose of the Rule 12(b)(6) standard, and therefore Rule 12(c) when used to challenge the sufficiency of a claim, is "to test the sufficiency of a complaint" rather than "to resolve contests surrounding the facts [or] the merits of a claim." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

That obligation does not disappear when the nonmovant fails to respond to a Rule 12 sufficiency argument. In *Guzman v. Acuarius Night Club LLC*, the Fourth Circuit held that Rule 12(b)(6) does not authorize default dismissal merely because a motion is unopposed; the court must still determine whether the complaint is legally sufficient on its face. 167 F.4th 217, 221–22 (4th Cir. 2026). Because Rule 12(c) employs the same sufficiency standard, the Court will not grant judgment on the pleadings solely because Honest Greens did not answer a particular argument.

The Court may consider the pleadings, exhibits incorporated into them, and matters of which judicial notice may properly be taken. But factual allegations in an answer do not become established merely because a Rule 12(c) motion has been filed, and the Court may not use a pleading-stage motion to resolve disputed facts in the movant's favor. *See* 5C *Wright & Miller's Federal Practice and Procedure* § 1368 (3d

ed. 2026) (explaining that judgment on the pleadings is appropriate only when material issues can be resolved from the pleadings and otherwise summary judgment or trial is necessary). Where Defendant's argument depends on a factual premise that conflicts with or goes beyond the First Amended Complaint, the Court excludes that premise rather than converting the present motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d).

## III. DISCUSSION

Poky's advances six main grounds for judgment. (DE 54-1.) First, Defendant contends Honest Greens lacks what the parties call "statutory standing" under *Lexmark* because Plaintiff has not plausibly alleged an injury within the Lanham Act's zone of interests or proximate causation. (*Id.* at 5–10; DE 56 at 3–8.) Second, Defendant argues geographic separation leaves Plaintiff without an available damages or injunctive remedy. (*Id.* at 8–10; DE 56 at 7–8.) Third, Defendant argues the § 1125(a)(1)(B) false advertising theory fails to identify a false or misleading factual representation. (*Id.* at 10–12; DE 56 at 8–10.) Fourth, it argues Count II duplicates the false association theory already pleaded in Count I. (*Id.* at 12–13; DE 56 at 10.) Fifth, Defendant contends the ACPA claim pleads no facts showing bad faith intent to profit. (*Id.* at 13–19; DE 56 at 10–14.) Sixth, Defendant seeks dismissal of the state law claims on supplemental jurisdiction grounds and because Honest Greens does not own a South Carolina trademark registration. (*Id.* at 19–21; DE 56 at 14–15.)

Honest Greens disputes the federal grounds and relies principally on *Lexmark* and *Belmora*. As to the state law claims, it addresses supplemental jurisdiction but does not substantively answer Defendant's independent South Carolina registration argument. (DE 55 at 10–21.) The Court takes the issues in turn.

## A. Section 43(a): Zone of Interests, Proximate Cause, and Geographic Separation

### 1. *Lexmark* concerns the statutory cause of action, not subject matter jurisdiction

The parties repeatedly describe Defendant's first argument as one of "statutory standing." (DE 54-1 at 5–10; DE 55 at 16; DE 56 at 3–5.) That shorthand is common, but *Lexmark* cautions that it is imprecise. The Supreme Court explained that the question is whether the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)"—in other words, whether the plaintiff has a cause of action under the statute. *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). The Court also explained that the absence of a valid cause of action does not implicate subject matter jurisdiction. *See id.* at 128 n.4. The Court, therefore, treats Poky's *Lexmark* argument as a merits challenge under Rule 12(c), not as a jurisdictional challenge.

*Lexmark* supplies two background limitations on the § 1125(a) cause of action. First, the plaintiff's interests must fall within the zone of interests protected by the Lanham Act. *See id.* at 129-32. In this setting, a plaintiff comes within that zone by alleging "an injury to a commercial interest in reputation or sales." *Id.* at 131–32. Second, the alleged injury must be proximately caused by the statutory violation. *See id.* at 132–34. For a typical deception-based claim, that ordinarily requires "economic

or reputational injury flowing directly from the deception" and, in a sales diversion case, deception that causes consumers to withhold trade from the plaintiff. *Id*. at 133.

**2. The First Amended Complaint plausibly alleges a protected commercial injury and proximate causation**

Poky's contends Honest Greens cannot satisfy either requirement because it operates restaurants only in Europe and does not allege that a consumer chose Poky's Myrtle Beach restaurant instead of an Honest Greens restaurant in Spain or Portugal. (DE 54-1 at 5–10.) In reply, Defendant emphasizes *Belmora's* caution that a foreign plaintiff relying only on foreign commercial activity may have difficulty stating a § 43(a) injury. (*Id*. at 4.) To that end, Poky's argues that one or two instances of online confusion are too isolated to establish a plausible causal connection. (DE 56 at 3–7 (citing *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710 n.8 (4th Cir. 2016), and *George & Co. LLC v. Imagination Ent. Ltd.*, 575 F.3d 383, 398-99 (4th Cir. 2009)).) Defendant also relies on decisions such as *Eli Lilly & Co. v. Willow Health Services, Inc.*, 2026 WL 639976 (C.D. Cal. Feb. 3, 2026), for the proposition that a plaintiff must plead a direct causal chain rather than a speculative commercial injury. (DE 54-1 at 7–8.)

Honest Greens responds that Defendant's premise understates the First Amended Complaint. Plaintiff points to allegations that it markets to United States consumers, receives substantial United States website traffic, has more than 36,000 United States-based application users, has thousands of United States social media followers, and attributes at least seven percent of its sales since 2021 to customers using United States-based credit cards. (DE 55 at 10–13 (citing DE 24 ¶¶ 10–20).)

Plaintiff also relies on the alleged instances of actual confusion in paragraph 50 and on its allegations that Poky's use has damaged the commercial goodwill and reputation associated with the HONEST GREENS marks. (DE 55 at 13–16.) Plaintiff contends those allegations bring this case within *Belmora's* teaching that § 43(a) is focused on the defendant's deceptive conduct and does not impose a categorical domestic-use prerequisite on the plaintiff. (*Id.* at 10–15.)

At the pleading stage, Honest Greens has the better argument. To begin with the zone of interests, the First Amended Complaint does not rely only on an abstract interest in a foreign mark. It alleges a United States-facing commercial reputation: sales to United States customers, marketing to those consumers, United States website traffic, more than 36,000 United States-based application users, and thousands of United States social media followers. (DE 24 ¶¶ 10–20.) It separately alleges injury to that reputation and goodwill from Poky's allegedly confusing use. (*Id.* ¶¶ 49–51, 55, 58, 65, 67.) *Lexmark* treats commercial reputation and sales as alternative protected interests. 572 U.S. at 131-32. Thus, the absence of an allegation quantifying lost European restaurant sales is not by itself fatal where Plaintiff plausibly alleges a commercial reputational injury.

The same allegations, taken together, plausibly plead proximate causation for the surviving false association theory. Paragraph 50 does more than allege abstract Internet confusion. It alleges communications from consumers who believed Defendant's Myrtle Beach operation was affiliated with Honest Greens abroad, including consumers who mistakenly placed orders with Defendant in the belief they

were dealing with Plaintiff. (DE 24 ¶ 50.) One consumer, for example, reported that an order had been sent to the wrong location in Myrtle Beach. (*Id.*) Those allegations supply a pleaded causal bridge between Poky's domestic use and the commercial reputation Honest Greens says it has developed among United States consumers. The pleading also alleges that Poky's used the HONEST GREENS name, domain, and social media identifier for restaurant services with the specific intent to deceive consumers as to source or sponsorship and that the resulting confusion damages Plaintiff's goodwill. (*Id.* ¶¶ 41–50.) Drawing reasonable inferences in Plaintiff's favor, those allegations describe consumer-facing deception tied to the very commercial reputation Plaintiff says the Lanham Act protects.

*Belmora* reinforces that conclusion, although its facts are not identical. There, the Fourth Circuit rejected a rule requiring the foreign plaintiff to show prior use of its mark in United States commerce as a condition of bringing a § 43(a) claim. 819 F.3d at 706–10. As the court held, the foreign plaintiff plausibly alleged proximate cause where consumers familiar with the plaintiff's Mexican FLANAX product could be deceived by the defendant's United States use and thereby withhold trade from the plaintiff. *Id.* at 711–12. Poky's correctly observes that Mexico's geographic relationship with the United States and the cross-border purchasing allegations in *Belmora* are stronger than the allegations here. (DE 56 at 3–4.) But *Belmora* did not announce a border-sharing requirement. Rather, it applied *Lexmark* to allegations of a commercial reputation extending across national boundaries and deception of consumers in United States commerce. *See Belmora*, 819 F.3d at 711–12.

Nor does *Belmora*'s footnote eight compel dismissal. That footnote cautions that "[a] few isolated consumers" who merely confuse a domestic mark with one seen abroad, without additional misleading conduct, would rarely state a viable claim. *Id.* at 710 n.8. Here, Plaintiff alleges additional conduct: Spaho's selection of the .us domain when Plaintiff's identical .com domain was unavailable; the later transfer of the .us domain to Poky's; Poky's use of that domain and HONESTGREENS.US for the same general category of restaurant services; an alleged specific intent to deceive consumers as to source or sponsorship; and actual consumer confusion and misdirection. (DE 24 ¶¶ 37–39, 41, 43, 48–50.) Whether Plaintiff can prove intentional copying, meaningful United States goodwill, or material confusion is a later question. On Rule 12(c), those factual allegations distinguish the pleading from a claim based only on a stray consumer's memory of a mark seen overseas.

Defendant's reliance on a "very close to a 1:1 relationship" likewise asks too much of *Lexmark*. (DE 54-1 at 7–8; DE 56 at 5.) *Lexmark* used that phrase to describe the particular causal relationship between Static Control's microchips and the remanufactured toner cartridges for which those chips had no other use. 572 U.S. at 139–40. It did not create a universal numerical pleading rule. Indeed, in rejecting a categorical direct competitor test, the Supreme Court explained that a noncompetitor "will often have a harder time establishing proximate causation," but it declined to bar such claims as a class. *Id.* at 136. Here, Plaintiff's theory is not a remote supplier injury separated by multiple independent market actors. It alleges direct

reputational injury from consumers' confusion concerning the source and affiliation of the parties' restaurant services.

*Eli Lilly* does not alter that result. There, the district court found a causal discontinuity between allegedly false prescription drug advertising and the plaintiff's lost sales because a physician's legally required prescribing decision intervened between the advertisement and the purchase. 2026 WL 639976, at *7–8. The present pleading alleges no comparable independent decision-maker. It alleges that consumers themselves encounter Poky's HONEST GREENS branding and draw the false affiliation inference that causes the asserted reputational harm. Whether that causal theory will survive an evidentiary record is not a question Rule 12(c) permits the Court to resolve now.

Finally, Defendant's reliance on *George & Co.* to characterize the two pleaded examples as *de minimis* does not warrant judgment on the pleadings. *George & Co.* evaluated actual confusion as one factor in the likelihood-of-confusion analysis on an evidentiary record. 575 F.3d at 398–99. Honest Greens does not rely on the number of examples alone. It pleads those examples alongside allegations of United States-facing marketing, a United States customer base, identical naming for restaurant services, and injury to goodwill. The weight to give actual confusion evidence is inherently factual. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 933 (4th Cir. 1995) (describing likelihood of confusion as an "inherently factual" inquiry). The Court, therefore, denies judgment on the § 1125(a)(1)(A) theory under *Lexmark*.

**3. Geographic separation does not eliminate the cause of action or all relief as a matter of pleading law**

Poky's separately argues that, because Honest Greens has no restaurant in the United States, Plaintiff can obtain neither damages nor injunctive relief. (DE 54-1 at 9–10.) Defendant relies principally on *Dawn Donut*, *Lone Star*, *Pizzeria Uno*, and *Brennan's*, and in reply argues Honest Greens conceded the point by not separately responding to those authorities. (DE 56 at 8–9.) Under *Guzman*, however, nonresponse to a Rule 12 sufficiency argument does not itself authorize judgment. 167 F.4th at 221–22. The Court still must determine whether the pleading is legally insufficient. Defendant, therefore, remains the movant and must establish that the pleadings foreclose relief as a matter of law.

The authorities cited by Poky's make geographic market separation highly relevant, particularly to likelihood of confusion and territorial injunctive relief, but they do not establish the categorical rule Defendant proposes. *Pizzeria Uno* is instructive. The Fourth Circuit found likelihood of confusion but held territorial injunctive relief unavailable at that time because the plaintiff had not penetrated the defendant's market. *See Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1536 (4th Cir. 1984). The court affirmed the denial of injunctive relief without prejudice to renewal if the plaintiff or its franchisees later entered the defendant's geographic area. *Id.* The case, therefore, distinguishes the likelihood-of-confusion merits from the present availability and territorial scope of a particular injunction.

*Lone Star* also warrants direct consideration. There, on a summary judgment record, the Fourth Circuit held that the geographically remote New York restaurant

plaintiff, Max Shayne, had not shown how the defendant's Arlington, Virginia, restaurant damaged its New York restaurant and reversed summary judgment in Max Shayne's favor on liability. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 938 (4th Cir. 1995). The posture and allegations here are different. This case is at the pleading stage, and Paragraph 50 specifically alleges consumer communications and mistaken orders linking Poky's domestic HONEST GREENS operation to Honest Greens' asserted reputation. (DE 24 ¶ 50.) Whether the evidence ultimately establishes sufficient confusion, market penetration, or reputational injury under *Lone Star* is reserved for the developed record.

*Brennan's* reinforces both sides of the geographic separation issue. It described physical separation as particularly significant when individual restaurants are competing and characterized the distant restaurant plaintiff's burden as a "high hurdle." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 134–35 (2d Cir. 2004). At the same time, *Brennan's* recognized that a geographically remote mark may gain protection in a distant market through extensive advertising or a sufficiently strong reputation, and it made clear that geography alone is not decisive. *See id*. Honest Greens has pleaded United States advertising, United States digital users, United States customers, and actual affiliation confusion. (DE 24 ¶¶ 10–20, 49–50.) Those allegations may or may not prove sufficient market penetration or confusion, but they do not allow the Court to assume on the pleadings that the parties occupy wholly hermetic markets.

Moreover, *Lexmark* itself cautions against turning uncertainty over remedies into a threshold bar to the statutory cause of action. It explained that difficulty quantifying damages is not an independent basis for denying a claim where a protected interest has been proximately injured, and a plaintiff unable to prove compensatory damages may in an appropriate case seek injunctive relief or disgorgement. 572 U.S. at 135–36. The Court, therefore, declines to decide at Rule 12(c) the ultimate territorial scope of any permanent injunction, the amount or availability of monetary relief, or the degree of market penetration Honest Greens can prove. Those questions may be addressed on the evidentiary record. Defendant's geographic separation argument is denied as a basis for judgment on the pleadings.

**B. The False Advertising Theory in Count I Fails to State a Claim**

Poky's next challenge is to paragraph 54 of Count I, which invokes § 1125(a)(1)(B). Defendant argues that Honest Greens never identifies a false or misleading factual representation in commercial advertising and merely repackages its source confusion allegations as false advertising. (DE 54-1 at 10–12.) In reply, Defendant emphasizes that trademark infringement and false advertising are distinct theories and that the pleading does not identify facts supporting materiality, audience deception, or injury from any particular factual statement. (DE 56 at 9–10.) Defendant also asks the Court to apply Rule 9(b), noting that some courts have required heightened particularity when a Lanham Act false advertising claim sounds in fraud. (DE 54-1 at 11–12.)

Honest Greens responds that *Belmora* recognizes false association and false advertising as separate § 43(a) causes of action and argues that Poky's use of HONEST GREENS on its website and promotional materials implies that Poky's services are the same as Plaintiff's. (DE 55 at 13–14, 17–19.) Plaintiff points again to paragraph 50's examples of actual confusion and contends that those allegations permit an inference that Poky's advertising misled consumers. (*Id.* at 13–14.) As to Rule 9(b), Plaintiff argues that *Belmora* did not impose a heightened pleading standard. (*Id.* at 14 n.4.)

Section 43(a) distinguishes the two theories. Subsection (A) addresses conduct likely to cause confusion as to "affiliation, connection, or association" or the "origin, sponsorship, or approval" of goods or services. 15 U.S.C. § 1125(a)(1)(A). Subsection (B), by contrast, addresses a false or misleading factual representation in commercial advertising that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods, services, or commercial activities. *Id.* § 1125(a)(1)(B). The Fourth Circuit requires, among other elements, a false or misleading representation of fact in commercial advertising. The Court has also emphasized that the challenged representation be a statement of fact rather than a general opinion. *See Design Res., Inc. v. Leather Industries of Am.*, 789 F.3d 495, 501–02 (4th Cir. 2015); *see also PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011). This Court recently applied those elements in *Geiger v. Racing Stables*, 2025 WL 1951879, at *4 (D.S.C. July 16, 2025).

Paragraph 54 does not satisfy that standard. It alleges in conclusory terms that Defendant's use of HONEST GREENS and "deceptive marketing materials" falsely represents the "nature, character, and/or qualities" of Poky's services. (DE 24 ¶ 54.) But the First Amended Complaint does not identify what statement of fact in those materials is false or misleading, what characteristic or quality is misrepresented, or why such a representation would be material to a purchasing decision. The concrete allegations concern the use of the HONEST GREENS name itself and the resulting belief that Poky's restaurant is connected with Honest Greens. (*Id.* ¶¶ 41–50.) Those allegations fit the text of subsection (A), which expressly addresses affiliation, sponsorship, and source confusion. They do not, without more, identify a factual misrepresentation about the nature, characteristics, qualities, or geographic origin of services under subsection (B).

*Belmora* does not supply the missing allegation. The false advertising theory there rested on allegations that the defendant's advertising represented its FLANAX product as effectively the same product consumers knew and purchased in Mexico. *See Belmora*, 819 F.3d at 712. In other words, the advertising allegedly conveyed a factual message about the identity and nature of the product beyond the mere use of a confusing name. Honest Greens argues Poky's promotional materials carry a similar implication (DE 55 at 13–14), but the First Amended Complaint does not allege a comparable statement by Poky's. A consumer's question asking whether Poky's has the "same menu as honest greens abroad" shows alleged confusion. (DE

24 ¶ 50.) It does not itself identify a representation Poky's made about its menu or services.

Accordingly, the § 1125(a)(1)(B) theory fails under Rule 8 and the ordinary plausibility standard. Because that conclusion is enough to resolve the claim, the Court need not decide whether Rule 9(b) categorically applies to Lanham Act false advertising claims in this Circuit. Defendant's motion is granted as to the false advertising component of Count I. The § 1125(a)(1)(B) theory is dismissed without prejudice to any properly supported motion for leave to amend. This Order itself neither grants leave to amend nor modifies the scheduling order.

**C. Count II Is Duplicative of the Surviving False Association Theory in Count I**

Defendant also seeks dismissal of Count II as duplicative. Poky's points out that Count I already alleges false association under § 1125(a)(1)(A) in paragraph 53, while Count II again alleges false association under the same statutory provision. (DE 54-1 at 12–13; DE 56 at 10.) Honest Greens responds that *Belmora* recognizes false association and false advertising as separate causes of action and argues it may pursue both theories. (DE 55 at 17–19.)

Plaintiff is correct about the legal taxonomy but not about the duplication in this pleading. *Belmora* explains that § 43(a) sets forth "unfair competition causes of action for false association and false advertising[.]" 819 F.3d at 706. Count I invokes both: paragraph 53 alleges false association under subsection (A), and paragraph 54 alleges false advertising under subsection (B). (DE 24 ¶¶ 53–54.) Count II then pleads

another subsection (A) false association theory based on the same allegedly confusing use of HONEST GREENS. (*Id.* ¶¶ 60–68.)

The Court's dismissal of paragraph 54's false advertising theory leaves the subsection (A) false association theory in paragraph 53 intact. Maintaining Count II as a second count for the same statutory theory, based on the same conduct and seeking the same relief, adds no distinct cause of action. Count II is dismissed as duplicative. That dismissal does not adjudicate or narrow the § 1125(a)(1)(A) theory pleaded in Count I.

**D. The ACPA Claim Plausibly Alleges Bad Faith Intent to Profit**

Count III presents a closer pleading question. The ACPA imposes liability on a person who, with a "bad faith intent to profit" from a distinctive mark, registers, traffics in, or uses a domain name that is identical or confusingly similar to that mark. 15 U.S.C. § 1125(d)(1)(A). The statute identifies nine nonexclusive considerations bearing on bad faith. *See id.* § 1125(d)(1)(B)(i). Those considerations include the registrant's prior bona fide use of the domain name in connection with goods or services and the registrant's intent to divert consumers from the mark owner's online location for commercial gain by creating confusion as to source, sponsorship, affiliation, or endorsement. *See id.* § 1125(d)(1)(B)(i)(III), (V).

Poky's argues the First Amended Complaint does no more than recite the phrase "bad faith intent to profit" in paragraph 74. (DE 54-1 at 13–17.) In reply, Defendant adds that the statute requires bad faith intent to profit from Plaintiff's mark, not merely knowledge of Plaintiff's domain name, and it contends that

knowledge of the mark plus confusing similarity, without more, cannot support a plausible bad faith inference. (DE 56 at 11–13.) Defendant also emphasizes paragraph 41's allegation that Poky's used honestgreens.us to promote an actual restaurant business, and it notes the absence of allegations that Poky's offered to sell the domain, concealed its identity, or warehoused numerous third-party marks. (DE 54-1 at 14–19; DE 56 at 11–14.) Relying on *Curated Works* and similar cases, Defendant contends the domain allegations describe ordinary trademark infringement rather than the "squatting" the ACPA targets. (DE 54-1 at 17-19.)

Honest Greens responds that the Court must read Count III together with the factual allegations it incorporates. (DE 55 at 19–21; DE 24 ¶ 69.) The pleading alleges that Spaho, an individual associated with Poky's, registered <honestgreens.us> in July 2022 because <honestgreens.com> was already owned by Plaintiff and unavailable, and that this circumstance was known to Defendant. The pleading also alleges that Spaho later transferred the domain to Poky's, and that Poky's thereafter used the domain for restaurant services. Plaintiff also alleges that Defendant acted with a specific intent to deceive consumers as to source or sponsorship and that consumers were actually confused or misdirected. (DE 24 ¶¶ 37–41, 48–50.) Count III then alleges that Defendant "registered, trafficked in, and used" the domain and acted with bad faith intent to profit from its registration and use, in willful disregard of Plaintiff's rights in the HONEST GREENS marks. (*Id.* ¶¶ 71–74.) Plaintiff argues those allegations permit an inference that the domain was used to divert consumers

by exploiting the goodwill associated with the HONEST GREENS name. (DE 55 at 19–21.)

The Fourth Circuit's ACPA cases counsel against treating any one statutory factor as dispositive. In *Harrods Ltd. v. Sixty Internet Domain Names*, the Court explained that the nine statutory considerations are nonexclusive and must be evaluated in light of the circumstances. 302 F.3d 214, 234–41 (4th Cir. 2002). Factor V, in particular, addresses an intent to divert consumers from the mark owner's online location for commercial gain by creating confusion as to source, sponsorship, affiliation, or endorsement, and *Harrods* treated strong evidence of such deliberate diversion as highly probative of bad faith. *See id.* at 236–38. *Harrods* also cautioned that the ACPA "was not designed to provide a battlefield for legitimate concurrent trademark users." *Id.* at 240. More recently, *Prudential Insurance Co. of America v. Shenzhen Stone Network Info. Ltd.* evaluated bad faith under the totality of the circumstances and reiterated that the ACPA targets abusive bad faith registrations that harm commerce, businesses, and consumers. 58 F.4th 785, 797–807 (4th Cir. 2023). Those decisions arose on developed records and illustrate the fact-sensitive nature of the inquiry.

Read as a whole, the First Amended Complaint crosses the plausibility threshold. The chronology requires care. The pleading alleges that Poky's was formed in October 2022, while Spaho, an individual associated with Poky's, registered <honestgreens.us> on July 1, 2022, and later transferred the domain to Poky's. (DE 24 ¶¶ 32, 37–38.) The Court, therefore, does not treat Poky's as the July 2022

registrant merely because Count III later alleges in general terms that Defendant "registered, trafficked in, and used" the domain. (*Id.* ¶ 72.)For now, the Court considers the conduct specifically attributed to Poky's after the transfer, its ownership and commercial use of the domain, together with the pleaded circumstances surrounding that conduct. Plaintiff alleges that the .us domain was selected because its identical .com domain was already unavailable. Plaintiff also asserts that this was known to Defendant and that Poky's used the domain for the same general category of restaurant services. Moreover, Plaintiff claims that Defendant acted with a specific intent to deceive consumers, and that consumers were actually confused or misdirected. (*Id.* ¶¶ 37–41, 48–50.) Those allegations, together with Count III's bad faith allegation, plausibly implicate factor V's concern with commercial diversion through a confusing online location. (*Id.* ¶¶ 71–74.)

The Court does not discount Defendant's competing points. Paragraph 41's allegation that Poky's later used the domain to operate a real restaurant may be relevant to the totality of the circumstances and to Poky's contention that it is a legitimate concurrent user. But it does not automatically establish factor III in Poky's favor. Factor III concerns the person's "prior use, if any, of the domain name in connection with the bona fide offering of any goods or services." 15 U.S.C. § 1125(d)(1)(B)(i)(III). On the pleaded chronology, the domain registration predates Poky's formation, and the First Amended Complaint does not allege prior use of the domain by Poky's before the conduct at issue. *Harrods* likewise treated "prior use" as the statutory focus, while recognizing that a longstanding preexisting business

history may bear on the broader bad faith analysis. 302 F.3d at 234–35. The absence of allegations that Poky's offered to sell the domain, concealed its identity, or warehoused third-party marks also may matter. But the weight of those circumstances and the legitimacy of Poky's concurrent-use theory are merits questions not resolved in the movant's favor on Rule 12(c).

Defendant is also correct that knowledge and confusing similarity, standing alone, need not establish bad faith intent to profit from the mark. But the Court does not rely on those facts alone. Rule 8 does not require Count III to repeat talismanic language if the incorporated factual allegations plausibly supply the required inference. Paragraph 74 links Defendant's operation of the domain to willful disregard of Plaintiff's rights in the HONEST GREENS marks. Paragraph 48 alleges a specific intent to deceive consumers as to sponsorship, source, and origin; and paragraph 50 alleges actual consumer confusion and mistaken orders. (DE 24 ¶¶ 48, 50, 69, 74.) *Curated Works* does not require a different result. There, the district court concluded allegations of ordinary infringement and search engine diversion did not show a deliberate attempt to profit specifically from squatting on the domain name. *See Curated Works Inc. v. Deal.com, Inc.*, 2020 WL 2559456, at *5-6 (S.D.N.Y. May 20, 2020). Here, the pleaded consumer diversion facts, not mere knowledge of the .com domain or similarity of names, are what permit the ACPA theory to survive at the pleading stage. Whether the proof ultimately shows only ordinary infringement rather than cybersquatting remains for the developed record.

Honest Greens also objects that Defendant relies on a federal trademark registration issued to Poky's in February 2026, after the First Amended Complaint and Answer were filed. (DE 55 at 20 n.6.) The Court does not rely on that registration to resolve Count III. Even assuming the Court may take judicial notice of the fact that a registration issued, that later event does not establish as a matter of law either Spaho's intent at the time of the initial registration or Poky's intent in connection with the later transfer and use alleged in the First Amended Complaint. Defendant's motion is, therefore, denied as to Count III.

## E. Defendant Has Not Shown That the State Law Claims Require a South Carolina Trademark Registration

### 1. Plaintiff's limited response does not relieve Defendant of its Rule 12(c) burden

Poky's argues Counts IV through VI must be dismissed because Honest Greens did not substantively answer Defendant's independent state law argument. (DE 56 at 14–15.) Defendant cites district court decisions for the proposition that failure to address an argument may be treated as a concession. (*Id.*) Honest Greens' opposition does not respond to the South Carolina-registration point; it principally notes that Defendant's supplemental jurisdiction request depends on dismissal of all federal claims. (DE 55 at 21 n.7.)

The Court considers Plaintiff's silence, but it does not itself establish Defendant's entitlement to judgment. *Guzman* holds that a Rule 12 motion cannot be granted by default for nonresponse; the court must still determine legal sufficiency. 167 F.4th at 221–22. Because Rule 12(c) uses the same sufficiency standard, the Court, therefore, examines the legal premise Defendant advances, that all three

South Carolina claims require Honest Greens to own or be entitled to register a South Carolina trademark, rather than treating Plaintiff's nonresponse as dispositive.

**2. The South Carolina statutory registration provisions do not govern all three pleaded state law causes of action**

Poky's relies on S.C. Code Ann. § 39-15-1105 and *R.L. Mlazgar Associates, Inc. v. HLI Solutions, Inc.*, arguing that a service mark can be used in South Carolina only when the associated services are rendered in this State and that Honest Greens admittedly operates its restaurants only in Europe. (DE 54-1 at 19–21.) From that premise, Defendant contends Counts IV through VI all fail because Honest Greens cannot claim a South Carolina trademark. (*Id.*; DE 56 at 14–15.)

The argument is too broad. Section 39-15-1105 supplies definitions for South Carolina's statutory trademark registration regime. Honest Greens, however, does not plead a cause of action for infringement of a South Carolina statutory registration. Count IV arises under SCUTPA; Counts V and VI arise under South Carolina common law. (DE 24 ¶¶ 76–86.) Defendant does not identify statutory text making state registration a universal prerequisite to those causes of action.

Nor does R*.L. Mlazgar* establish that proposition. *Mlazgar* stated that South Carolina common law unfair competition is coextensive with the elements used to prove a Lanham Act claim and dismissed the claim before it because that plaintiff did not allege ownership of a valid mark. *See R.L. Mlazgar Associates, Inc. v. HLI Solutions, Inc.*, No. 6:22-cv-04729-JDA, 2025 WL 2224039, at *6–7 (D.S.C. Aug. 5, 2025). The case did not hold that a plaintiff must possess a South Carolina statutory registration before asserting common law unfair competition. Indeed, the authorities

*Mlazgar* cites describe common law unfair competition in terms of possession of a mark, use in commerce in connection with goods or services, and likelihood of confusion. *See id.*; *see also Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 802 F. Supp. 1386, 1399 (D.S.C. 1992), rev'd on other grounds, 9 F.3d 1091 (4th Cir. 1993).

To be sure, Honest Greens faces a distinct territorial issue on its common law trademark claim. Common law ownership generally arises from actual use of the mark in a particular marketplace. *See Emergency One, Inc. v. American FireEagle, Ltd.*, 332 F.3d 264, 267–68 (4th Cir. 2003) (citing *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918)). Honest Greens alleges no brick-and-mortar restaurant in South Carolina. *Pizzeria Uno*, likewise, illustrates that territorial market penetration may affect the availability of relief on a South Carolina common law unfair competition theory. 747 F.2d at 1536 & n.10. Those facts and authorities may prove important when the Court determines the geographic extent of any common law rights on a developed record. But that is not the same as Defendant's categorical proposition that absence of a South Carolina registration defeats the common law claims. DE 54-1 does not develop the narrower market penetration and territorial priority theory sufficiently to establish judgment as a matter of law on the pleadings, and the Court does not resolve that issue sua sponte.

SCUTPA is even further removed from Defendant's registration premise. A SCUTPA claim requires an unlawful trade practice, actual ascertainable damages resulting from that practice, and an adverse impact on the public interest. *See Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998); *see also* S.C. Code Ann.

§ 39-5-140. Trademark infringement or false designation of origin can supply the allegedly deceptive practice. *See Upstate Plumbing, Inc. v. Pearson*, 2024 WL 3426914, at *6 (D.S.C. Feb. 13, 2024) (collecting authority); *see also Glob. Protection Corp. v. Halbersberg*, 503 S.E.2d 483, 487 (S.C. Ct. App. 1998). The First Amended Complaint alleges ongoing public-facing use of the HONEST GREENS name, actual consumer confusion, potential for repetition, and injury. (DE 24 ¶¶ 49–50, 76–79.) Defendant may contest the sufficiency or proof of those elements on other grounds, but DE 54-1 does not separately develop them; it rests the state law dismissal request on the asserted lack of a South Carolina trademark. (DE 54-1 at 19–21.) That ground does not establish judgment as a matter of law.

Accordingly, the Court denies Defendant's Rule 12(c) motion as to Counts IV, V, and VI. This ruling is limited. It does not hold that Honest Greens has established South Carolina common law priority, sufficient market penetration, actual SCUTPA damages, or the public interest element. It holds only that the South Carolina registration argument presented in DE 54-1 does not foreclose these causes of action on the face of the pleadings. Those merits issues may be addressed on the developed record where properly presented.

**F. Supplemental Jurisdiction Remains Proper**

Finally, Poky's asks the Court to decline supplemental jurisdiction over Counts IV through VI under 28 U.S.C. § 1367(c)(3) if the federal claims are dismissed. (DE 54-1 at 19.) Honest Greens responds that the premise fails if any federal claim remains. (DE 55 at 21 n.7.) Because the Court denies judgment on the § 1125(a)(1)(A)

false-association theory in Count I and on the ACPA claim in Count III, federal claims over which the Court has original jurisdiction remain pending. Section 1367(c)(3), which applies when the district court "has dismissed all claims over which it has original jurisdiction," is, therefore, not triggered. Defendant's request to dismiss the state law claims on supplemental jurisdiction grounds is denied.

## IV. CONCLUSION

For the reasons above, Defendant Poky's LLC's Motion for Judgment on the Pleadings (DE 54) is GRANTED IN PART and DENIED IN PART, as follows:

1. The motion is GRANTED as to the false advertising theory under 15 U.S.C. § 1125(a)(1)(B) pleaded in Count I. That theory is DISMISSED WITHOUT PREJUDICE to any properly supported motion for leave to amend. This Order itself neither grants leave to amend nor modifies the scheduling order.
2. The motion is GRANTED as to Count II because Count II duplicates the § 1125(a)(1)(A) false-association theory already pleaded in Count I. Count II is DISMISSED as duplicative; that dismissal does not adjudicate or narrow the § 1125(a)(1)(A) theory pleaded in Count I.
3. The motion is DENIED as to the § 1125(a)(1)(A) false-association theory in Count I, Count III (ACPA cybersquatting), Count IV (SCUTPA), Count V (common law unfair competition), and Count VI (common law trademark infringement).

4. Nothing in this Order determines Plaintiff's ultimate entitlement to damages or permanent injunctive relief, the geographic scope of any protectable common law rights, or any factual issue presented by the parties' pending summary judgment motions.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 2, 2026